THE PEOPLE OF THE STATE OF NEW YORK ex rel. DANIEL G. ABER *v.* HENRY M. LEONARD, as Mayor, WYGANT D. FOWLER, WILLIAM R. PERKINS, ROY W. SPENCER and JAMES D. TWEED, as Commissioners, Comprising the City Council of the City of Newburgh, N. Y., Respondents.

(Supreme Court, Orange County, October, 1921.)

Mandamus — automobile bus line — public necessity and convenience question for public service commission — consent — city council.

The question of public necessity and convenience is for the public service commission to determine, and where the refusal of a city council to give consent to the operation of a bus line is put upon the ground that it is not a public necessity, and not for the best interests of the city nor for its citizens, a peremptory writ of mandamus will issue to compel the city council to issue such a consent to relator who is willing to abide by the rules and regulations prescribed by the city for the use of its streets.

APPLICATION for a peremptory writ of mandamus.

D. Clinton Dominick, for relator.

Raphael A. Egan, corporation counsel, for respondents.

SEEGER, J. This is an application for a peremptory writ of mandamus to compel the city council of the city of Newburgh to issue a consent to the relator, Daniel G. Aber, to operate a bus line between said city and the city of Middletown, in Orange county.

The city council adopted an ordinance March 14, 1921, specifying the terms upon which such applications would be granted. The relator made applica-

tion for such consent pursuant to section 26 of the Transportation Corporations Law, and a hearing was had thereon, after which his application was refused. In answering affidavits such refusal seems to have been based upon the ground that the bus line was not a public necessity and not for the best interests of the city of Newburgh, nor the citizens of said city.

The applicant contends that the council, in refusing the consent applied for, is usurping the power of the state public service commission, in passing upon the question as to the public necessity for the proposed bus line, and that it has no power to refuse the consent; that its powers are limited to fixing the terms upon which the consent should be granted.

The precise question raised does not seem to have been passed upon by the courts of this state. I am informed, however, that the attorney-general of the state has recently delivered an opinion upon a similar question, arising in the city of Kingston, to the effect that the city has only the power to prescribe the terms upon which the application should be granted, and that the questions of public necessity and convenience should be determined by the public service commission.

The United States District Court, District of Connecticut, recently said in the case of *Lane* v. *Whitaker,* N. Y. L. J. Sept. 24, 1921: " The citizen has the right of travel upon the highways and may transport his property thereon in the ordinary course of life and business, but this is a very different thing than permitting the highway to be used for commercial purposes, as a place of business, for private gain, in running jitney buses. The right, common to all, to the use of highways, is the ordinary use made thereof, but where, for private gain, a jitney owner wants a special and extraordinary benefit from the highway,

to use it for such commercial purpose, the Legislature may, in the exercise of its police powers, wholly deny such use or it may permit it to some and deny it to others, and this is because of the extraordinary nature of such use. And where the Legislature grants the permission to use the highway it may do so under regulations which are common to all applicants. They may grant, refuse or revoke the license, and in so doing the Legislature may permit of rules and regulations when such use is granted. This it has done in the act in question by providing that a body created under the law (the Public Utilities Commission) may make such rules and regulations and grant such license when public convenience and necessity require it.''

The public utilities commission of the state of Connecticut is a body with powers similar to the public service commission of this state. The legislative act of the state of Connecticut, the validity of which was the subject of inquiry in the case above cited (Public Acts 1921, of Connecticut, chap. 77), provided that:

'' Sec. 3. No person, association or corporation shall operate a jitney until the owner thereof shall have obtained a certificate from the Public Utilities Commission specifying the route over which such jitney may operate and the service to be furnished, and that the public convenience and necessity require its operation over such route. * * * ''

It will be noted that under this statute no consent of the local authorities is required and that the legislature delegated the entire question to the public utilities commission. Whereas in this state the legislature also requires the applicant to obtain the consent of the local authorities.

The Transportation Corporations Law, section 26, enumerates the conditions which the city council may prescribe, providing in part as follows: '' No bus

line * * * shall be operated wholly or partly upon or along any street, avenue or public place in any city, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing the consent of the local authorities of said city, as defined by the railroad law, to such operation, upon such terms and conditions as said local authorities may prescribe, which may include provisions covering description of route, rate of speed, compensation for wear and tear of pavement, improvements and bridges, safeguarding passengers and other persons using such streets, * * *.''

It is evident that the city council in refusing the relator's application were of the opinion that they had the power and authority to refuse the application if, in their judgment, public necessity did not require the bus line, or if it were not for the best interests of the city and its inhabitants. The attorney-general of the state, however, in his opinion holds to the contrary.

I do not find any case reported in this state or any other state in which a city refused an application of this kind. It has evidently been considered for the best interests of the cities to encourage transportation facilities and to grant applications of this kind because such means of transportation are generally for the best interests of the people. In many of the reported cases cities have permitted the operation of bus lines without requiring the certificate of the public service commission required by the statute.

It is true that the legislature, in the statute above quoted, as well as in the charter of the city of Newburgh, granted to the city the power to regulate the use of streets by persons and vehicles and to grant franchises or rights to use the streets, but I find no

authority anywhere for the city to refuse the use of the streets to any citizen who is willing to abide by the rules and regulations which the city prescribes for the use of the same.

It is true that the state has the right to regulate the use of streets and even to refuse their use when public necessity and convenience so requires, but the power to make such refusal seems to be vested in the public service commission only.

The mandamus applied for should be granted, without costs, however, but the relator's legal disbursements should be paid by the city.

Ordered accordingly.