In the Matter of the Application of ABRAHAM DOBOSEN, Respondent, for a Mandamus Order against MICHAEL J. MESCALL, as Mayor, and JOHN DROSZDOWSKI and Others, as Councilmen, Comprising the City Council of the City of Lackawanna, N. Y., Appellants.

JOHN F. BURKE, as Receiver of HAMBURG RAILWAY COMPANY, Intervenor, Appellant.

Fourth Department, May 2, 1923.

Municipal corporations — mandamus to compel mayor and councilmen of city of Lackawanna to rescind action denying consent to operation of bus line and to grant said consent under Transportation Corporations Law, § 26 — consent to operation of bus line is discretionary and cannot be compelled by mandamus — fact, that convenience and necessity did not require bus line was one reason for denying consent, does not make denial invalid — action of municipal authorities is final in absence of fraud.

Whether or not municipal authorities will grant consent to the operation of a bus line within the municipality under section 26 of the Transportation Corporations Law is discretionary and, therefore, the consent to operate a bus line cannot be compelled by mandamus.

The fact that the municipal authorities may have denied consent on the ground, among others, that convenience and necessity did not require the operation of a bus line, does not make the denial invalid.

The action of municipal authorities upon a request for consent to operate a bus line is final in the absence of fraud, collusion or some other improper or illegal element and their determination will not be nullified by the courts.

APPEAL by Michael J. Mescall and others from a peremptory mandamus order, made at the Erie Special Term and entered in

the office of the clerk of the county of Erie on the 18th day of August, 1922, directing the defendants, Mayor and Councilmen of the City of Lackawanna, N. Y., to rescind their previous action and grant consent to the petitioner to operate a motor bus line pursuant to section 26 of the Transportation Corporations Law.

*John J. Sullivan,* for the appellants Michael J. Mescall, as mayor, and others.

*Penney, Killeen & Nye* [*John A. Kelly* of counsel], for John F. Burke, as receiver, etc., intervenor, appellant.

*Dirnberger & Moore* [*M. F. Dirnberger, Jr.,* of counsel], for the respondent.

HUBBS, P. J.:

The city council of the city of Lackawanna, after a public hearing duly held, passed a resolution refusing to grant its consent to the operation of a motor bus line, as prayed for in a petition filed by the petitioner herein. Thereafter the Special Term granted a peremptory mandamus order directing the city council to rescind said action and grant consent to the operation of the bus line.

The question presented for our determination is whether the consent required by section 26 of the Transportation Corporations Law (added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307) can be compelled by mandamus or whether such consent involves the exercise of discretion and cannot be controlled by a court order.

Prior to 1913 a bus line was not deemed to be a " common carrier " within the meaning of the Public Service Commissions Law except when operated in New York city. (See Trans. Corp. Law, §§ 20,* 24.) By chapter 495 of the Laws of 1913 section 25 was added to said Transportation Corporations Law making a bus line, which was operated upon and along certain State highways and roads or in, upon or along the highways of the cities of Buffalo and Rochester, a common carrier subject to the jurisdiction of the Public Service Commission. Chapter 667 of the Laws of 1915 amended section 25 so as to make it applicable to a bus line operating in *any city,* and added section 26 to the Transportation Corporations Law. The statute as amended placed such common carrier under the jurisdiction of the Public Service Commission and required such common carrier to obtain a certificate of public convenience and necessity from the Commission. Section 26 also provides: " No bus line   *   *   *   shall be operated wholly or

---

* Since amd. by Laws of 1921, chap. 256.— [REP.

partly upon or along any street, avenue or public place in any city, nor receive a certificate of public convenience and necessity until the owner or owners thereof shall have procured, after public notice and a hearing, the consent of the local authorities of said city, *as defined by the Railroad Law,* to such operation, upon such terms and conditions as said local authorities may prescribe, which may include provisions covering description of route, rate of speed, compensation for wear and tear of pavement, improvements and bridges, safeguarding passengers and other persons using such streets." By chapter 307 of the Laws of 1919 these provisions of section 26 were re-enacted and the section was further amended so as to permit its application to towns and villages and to the operation of bus lines therein. There are separate statutes applicable to New York city. Must the local authorities grant such consent to every petitioner, no matter how many there may be, or has it a discretion?

A bus line, being a common carrier, is subject to the control of the State and does not occupy the position of a private citizen using city streets for ordinary purposes. In *Dickey* v. *Davis* (76 W. Va. 576; 85 S. E. Repr. 781; L. R. A. 1915F, 840) the court said: " The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all; while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader; the right may be wholly denied, or it may be permitted to some and denied to others because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities:

" 'A distinction must be made between the general use, which all the public are permitted to make of the streets for ordinary purposes, and the special and peculiar use, which is made by classes of persons in the pursuit of their occupation or business, such as hackmen, drivers of express wagons, omnibuses, etc.' Tiedemann, Mun. Corp. § 299.

" 'The rule must be considered settled, that no person can acquire a right to make a special or exceptional use of a public highway, not common to all the citizens of the State, except by grant from the sovereign power.' *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq. 242; McQuillin, Mun. Corp. 1620."

The title and right to regulate and control the public streets and highways of the State are vested in the State, and it may delegate to municipalities its right within their respective jurisdictions. It would be legal for the Legislature to delegate to municipalities the right to refuse consent to operate bus lines within their jurisdiction, for there is no constitutional right to use a public highway in the operation of the private business of a common carrier for profit without the consent of the State, and no constitutional right would be abridged by the refusal of such consent. (*Dickey* v. *Davis, supra; Hadfield* v. *Lundin*, 98 Wash. 557; 168 Pac. Rep. 516; L. R. A. 1918B, 909; *Schoenfeld* v. *City of Seattle*, 265 Fed. Rep. 726; *People* v. *Rosenheimer*, 209 N. Y. 115.) It cannot be successfully contended, therefore, that there is a presumption that the Legislature did not intend to delegate to municipalities the power to refuse to grant consents for the operation of bus lines.

It seems clear to me that section 26 of the Transportation Corporations Law does delegate to municipalities the power to refuse to consent. It says that: " No bus line * * * shall be operated * * * until the owner or owners thereof shall have procured * * * the consent of the local authorities of said city, as defined by the Railroad Law." Under sections 171 to 173, inclusive, of the Railroad Law, it is clearly settled that a city cannot be compelled to consent to the operation of a street railroad. In *People ex rel. West Side Street R. Co.* v. *Barnard* (110 N. Y. 548) the court said: " The municipal authorities have the absolute power to grant or withhold their consent to the construction of street railways; and they may impose any conditions, however onerous and difficult to perform, which seem to them, in the exercise of their discretion, to be proper, as the terms upon which their consent will be given." (See, also, *Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144.) Upon principle, the same rule that applies to a street railway should apply to a bus line. A bus line has no more right to be operated upon a public street without the proper consent than has a street railway. When so operated it is a public nuisance. (*People ex rel. Judge* v. *Hylan*, 200 App. Div. 430.)

The argument that in certain cases hardship might result from a construction of section 26 of the Transportation Corporations Law which would permit a municipality to exclude a bus line is just as applicable to the provisions of sections 171 to 173, inclusive, of the Railroad Law; still the courts have construed the word " consent " as used there as vesting in municipal authorities a discretion not reviewable by the courts.

If the respondent is right in his construction of section 26 of the Transportation Corporations Law, which is that the city has no discretion but must grant consent whenever petitions are presented, no matter how many, and has only the power to prescribe terms and conditions, then the words of said section " after public notice and a hearing " are meaningless. Surely those words were placed in the statute for a purpose, but why give public notice and hold a hearing if no discretion is vested in the city council? It would be an idle ceremony if the council could, in any event, be compelled to grant consent, even though every voter in the city had publicly expressed opposition thereto.

It is not a satisfactory answer to say that the words " after public notice and a hearing " were inserted in the statute for the purpose of securing an expression of public sentiment upon the terms and conditions upon which the consent must be granted. The primary right conferred by the section is the right to consent, not the right to impose terms and conditions — that is a secondary matter. It is only after the consent is granted that the terms and conditions are of importance. The statute makes it mandatory that the consent of the local authorities be obtained before a bus line can be operated, but the provision of the statute permitting the local authorities to prescribe terms and conditions is permissive only. The consent could be granted without imposing terms or conditions. The word " consent " as used in section 26 of the Transportation Corporations Law should be given the ordinary meaning. If the Legislature had intended that any one should be permitted to operate a bus line upon complying with the terms and conditions imposed by local authorities it would have said so and would not have required an applicant to procure the consent of the local authorities. (*People ex rel. Schwab* v. *Grant,* 126 N. Y. 473.)

It is urged by the respondent that the reason why consent was refused by the municipal authorities was that the operation of the bus line would be injurious to the interests of the street railway company and that convenience and necessity did not require the operation of the bus line. That may have been one of the reasons, but other reasons are set up in affidavits filed by the defendants upon the return of the order to show cause. It is urged that the question of convenience and necessity is, by sections 25 and 26 of the Transportation Corporations Law, vested in the Public Service Commission, and that the city council, in refusing consent upon the ground that public convenience and necessity did not require it, usurped the functions of the Public Service Commission, which alone is vested with authority to determine the question

of public convenience and necessity. I do not think that the papers in this case justify respondent's contention that the question of public convenience and necessity was the sole ground for refusing consent.

In determining whether or not consent will be granted to operate a bus line, the question of convenience and necessity will, necessarily, be involved to a greater or lesser extent in all cases. There are many other questions which will also have an influence in determining the question. In the case at bar it appears that there is a street railway operating in the city, that it is in the hands of a receiver and is earning just about enough to keep going. It is a taxpayer and also, under section 178 of the Railroad Law (as amd. by Laws of 1921, chap. 433) bears the burden of maintaining a portion of the streets over which it passes. Naturally the city authorities did not want to do anything which would put the road out of business and deprive the city of the advantages of a street railway, of the help which it receives from the railway in maintaining the streets and the taxes which the railway pays. Those were questions of public interest primarily and not questions relating to competition between common carriers except as that question was incidentally involved.

When municipal authorities consider a petition and pass upon it, their determination is final, at least in the absence of fraud, collusion or some other improper or illegal element, and their determination cannot be nullified by the courts. (*People ex rel. Wooster* v. *Maher*, 141 N. Y. 330.)

In the case of *People ex rel. Aber* v. *Leonard* (116 Misc. Rep. 591) views were expressed which are not in harmony with the conclusion which I have reached. That opinion has not been followed in all cases. In *Matter of Roberts Bus Corporation* (119 Misc. Rep. 798) Mr. Justice McCANN reached a contrary conclusion, and the holding was also criticised in the Yale Law Journal (Vol. 31, p. 554).

I advise that the order be reversed, with ten dollars costs and the motion denied, with ten dollars costs.

All concur; DAVIS, J., not sitting.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.