Van Voobhis, J.
(concurring). The Commissioner of Education resolves many administrative problems in the management of the State department of which he is the executive head. *146 In disposing of them he has a wide range of discretion, but he does not adjudicate the legal rights of contesting parties. In addition to these administrative duties, the Commissioner has been vested by law with original jurisdiction over other controversies that are judicial in nature, sometimes to be exercised concurrently by the Commissioner with courts of law, and at other times to be exercised by him alone without recourse to the law courts.* In either event, once jurisdiction has been assumed, the Commissioner finds the facts and applies the law in substitution for a court, subject only to limited court review (Matter of Ross v. Wilson, 308 N. Y. 605; Matter of Levitch v. Board of Educ., 243 N. Y. 373). That is not an administrative but a quasi-judicial function, well understood in the field of administrative law. Although the exercise of that jurisdiction where the facts are clearly established, may appear similar in practice to use of administrative power, in essence it is different and its exercise is more carefully safeguarded by traditional methods of law and procedure since it involves the determination of justiciable controversies. Under our system of justice such controversies cannot be decided except according to procedure which satisfies the rudiments of due process of law, even though the procedure may be more flexible than would be applied in court. A problem of public administration can be constitutionally decided like a similar problem in the management of private business, even dispensing with oral argument or the filing of affidavits if the officer sees fit and it is not required by statute. But when an issue arises that would be decided in court as a judicial controversy except for a statute which transfers its determination to the Commissioner of Education, standards of a judicial nature have to be applied in order to fulfill the requirements of constitutional due process of law. Power to make rules of procedure has been conferred upon the Commissioner in general terms by section 311 of the Education Law, but such rules must be reasonable, and adapted to the matter in hand, and cannot violate the principles of due process (Matter of *147 Village of Bronxville v. Maltbie, 284 N. Y. 206, 215). A rule such as subdivision d of rule 18 of the 1955 Rules of Practice of the Commissioner of Education prohibiting the taking of oral testimony and requiring all controversies to be heard on affidavits and exhibits, may be valid for the disposal of administrative questions and even quasi-judicial matters where there is no triable issue of fact (e.g., Matter of Kuhn v. Commissioner of Educ., 1 A D 2d 533, appeal dismissed 2 N Y 2d 749, where it was disputed that certain ballots had been correctly marked, and the disputed ballots were in evidence before the Commissioner). In such instances where there is no triable issue of fact, there is no greater constitutional need for the taking of evidence in a quasi-judicial hearing than there would be in court on a motion for summary judgment under rule 113 of the Rules of Civil Practice or for the various kinds of relief for which motions may be granted on affidavits under rule 108. But the taking of testimony cannot be prohibited under the rule-making power, nor even by statute, in a judicial or quasi-judicial proceeding where the facts are in dispute or are not clearly established, without violating the due process clauses of the State and Federal Constitutions. Justice Brandéis once wrote that “ in the development of our liberty insistence upon procedural regularity has been a large factor ” (Burdeau v. McDowell, 256 U. S. 465, 477). Justice Frankfurter has added: “ It is noteworthy that procedural safeguards constitute the major portion of our Bill of Rights” (Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123, 164).
There has been an endeavor to blend administrative and judicial functions in the Department of Education. Administratively the Commissioner is charged with executing the policies of his department through the public school system of the State. By sections 2037 and 310 of the Education Law, he is also given judicial power in the field over which he is administrator. He thus frequently sits as judge in his own case as administrator. That does not mean, however, that the Commissioner is universally above the law except as he chooses to apply or interpret it. Instead of freeing him from the requirements of due process in the exercise of quasi-judicial power, this concentration of power and responsibility renders vitally necessary observance by him of the fundamental law in proceedings of this character. *148 Due process in the decision of justiciable controversies requires a hearing, including opportunity to the parties to examine and cross-examine witnesses if material facts or inferences of fact are conflicting or uncertain (Matter of Hecht v. Monaghan, 307 N. Y. 461; Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103; Matter of Guernsey Breeders Co-op v. Noyes, 284 N. Y. 197; Matter of Rochester Tr. Corp. v. Public Service Comm., 271 App. Div. 406).
This controversy has arisen from the circumstance that the Legislature has committed the improvement of sites in school districts, and the issuance of bonds and the levying of taxes to pay for them, to majority vote of the qualified voters at school district meetings (Education Law, §§ 416, 2021). Qualified voters consist mainly of taxpayers and parents of children of school age in the district (Education Law, § 2012). The favorable vote of a majority is a jurisdictional requisite to the construction and financing of these improvements and to payment therefor by taxation (Matter of Floyd-Jones v. Town Board, 249 N. Y. 398, 405). The Legislature could have directed the erection of this schoolhouse and the levying of taxes without local consent, but, local consent having been made a condition precedent by statute to the erection of the building and the charging of taxes to pay for it against the real property in the district, the taxpayers have a right to insist that the condition precedent imposed by the Legislature shall be met. They are entitled to a determination in some forum under due process of law that this proposition was in fact passed at a district meeting duly called and held.
Even though the Constitution does not require previous consent of voters to the erection of this schoolhouse, these taxpayers had the right to insist that the fact be established by constitutional means that the proposition was passed. They could not be bound by the mere fiat of the Commissioner of Education that the proposition passed in the absence of adequate proof that it was passed. Ordinarily the return of the inspectors of election would be sufficient proof. Here, for reasons hereafter stated it was not, and the return left the fact in uncertainty and dispute. The Commissioner is authorized to decide the fact as a quasi-judicial officer, as it might have been *149 decided in court, but that signifies that he must decide it in accordance with the constitutional requirements of due process.
In the instant case taxpayers seek to review a determination by the Commissioner of Education which upheld a central school district special election at which a proposition to build a junior-senior high school was reported as carried by 8 votes. The “ public counters ” on the voting machines indicated that these machines had been operated 24 times more than the total number of persons who had been admitted to vote by the inspectors of election. This discrepancy was equal to 3 times the number of votes which would have been necessary to have changed the result. In a political election this would be regarded as a serious irregularity, impugning the accuracy of the announced result to such a degree as to cast the burden of sustaining the election upon the victors (People ex rel. Judson v. Thacher, 55 N. Y. 525). Two previous school elections were vacated and new elections ordered by former Commissioners of Education on account of somewhat similar irregularities (Matter of District 13, Town of Huntington, 58 N. Y. St. Dept. Rep. 461; Matter of District 6, Town of Babylon, 64 N. Y. St. Dept. Rep. 113). In the present case the Commissioner stated in an opinion that he does not attempt ‘ ‘ to solve the mystery of the differences in the various totals ”, but sustained the election. Affidavits were submitted to him in behalf of the local Board of Education purporting to show that some voters — without stating how many — had closed and opened the curtain on the voting machine several times while voting once. It was inferred that this was the cause of the discrepancy and that it happened 24 times. Appellant taxpayers contend that this is mere speculation. They also contend — and this is where the constitutional question would enter on the basis of which they have appealed as of right — that in seeking redress before the Commissioner of Education they were entitled to examine and cross-examine the witnesses, and to elicit from the inspectors of election and others who made affidavits for the Board of Education that they could not have seen the voters through the curtains of the voting machines, who are supposed to have become nervous and to have closed and opened the curtains several times when they should have done so only once. Such *150 a person would have voted several times, intentionally or unintentionally, if he or she pulled down the 1 ‘ yes ” or “no” lever on the voting machine each time before opening the curtain. Appellants contend that they had a right, among other matters, to cross-examine these witnesses concerning how they knew that the voting lever was pulled down only once when the curtain handle was jerked back and forth several times. They also contend that only by testimony could it have been elicited what were the facts underlying the insoluble 11 mystery ’ ’ with which the Commissioner found himself confronted on the basis of the affidavits submitted to him.
The Appellate Division has held notwithstanding that this would be a justiciable question, to be decided in court, if it arose in a political election, that the nature of the issue is changed for the reason that it is decided by the Commissioner of Education. The accepted rule is that the function classifies itself as administrative or quasi-judicial according to its nature and does not become the one or the other depending upon by what official it is to be performed. Only by what seems to me to be this strained reasoning was it thought possible to escape the principle thus enunciated in Matter of Hecht v. Monaghan (supra, p. 470): “ The hearing held by an administrative tribunal acting in a judicial or quasi-judicial capacity may be more or less informal. Technical legal rules of evidence and procedure may be disregarded. Nevertheless, no essential element of a fair trial can be dispensed with unless waived. That means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal [citing cases].” (Italics supplied.) Referring to the notice attached to the summons before the police commissioner in the Hecht case that “You May Being Witnesses With You”, the opinion by Judge, now Chief Judge Conway, states (p. 469): “ Manifestly, then, the respondent recognized an obligation imposed upon it by those fundamental principles of basic justice and fair play which underlie our entire system of jurisprudence. ’ ’
*151 I do not understand by what reasoning the right to call and to cross-examine witnesses is a fundamental principle of basic justice and fair play when applied to a hearing before a police commissioner but not when applied to a hearing-before the Commissioner of Education. The court entertained jurisdiction in Matter of Hecht v. Monaghan on an appeal as of right on constitutional grounds, it being held that a hack driver’s license had been revoked without due process. A hack driver’s license was regarded as a property right conferred on Hecht under the Administrative Code of the City of New York. The Appellate Division appears to have held here that taxpayers in a school district have no property right to insist that a fair election shall be conducted as provided by the Education Law, before their properties can be charged with the $1,260,000 estimated cost of this new improvement. Let us assume that it would be good for the people in the district to have a new schoolhouse. Nevertheless the law is not in the Commissioner’s breast. His will does not have the force of law. He can only adjudicate the rights and liabilities of these parties according to law, and as the trier of the facts concerning what did happen at this election. He could try the facts in no way except by due process of law. ‘ ‘ The issue before this court ’ ’, as was said in the Hecht case, “is whether the hearing accorded petitioner * * * met the minimal constitutional requirements.” It did not meet the minimal constitutional requirements here.
It is enlightening that in section 313 of the Education Law (added by L. 1948, ch. 753; amd. by L. 1951, ch. 208, and L. 1953, ch. 356) discrimination in the admission of applicants to educational institutions is forbidden on account of race, religion or national origin. In that context it is provided that the Commissioner and the Board of Regents shall have power to subpoena witnesses, compel their attendance, take testimony under oath, and that the respondent shall have the right to “ present evidence and examine and cross-eamnine witnesses.” This section continues by assigning the consequences ‘ ‘ If, upon all the evidence, the regents shall determine ”, etc. (Italics supplied). No lack of due process is there. This statute, only two sections removed from the section on which the Commissioner relies as having given to him rule-making power to dispense with the taking of testimony in all cases, shows that the Legislature was *152 aware of what is necessary and constitutional in order to get at the real facts of a situation. It shows that the Legislature realized the force of Professor Wigmore’s famous utterance that cross-examination is the greatest engine for the discovery of truth that was ever invented. If these effective constitutional procedures were intended to be applied in ascertaining whether a negro, for example, has been discriminated against in admission to a school, are taxpayers so unimportant that they are to be treated as having no stake in a district election? The nearer the Commissioner comes to possessing the absolute powers for which his counsel contends, the more scrupulously is he obliged to secure these constitutional rights to taxpayers and all interested parties.
The ruling by the Appellate Division is tantamount to holding that the Legislature may preclude, and has in this instance precluded, all redress in the courts to adjudicate upon the facts with respect to the conduct of school district elections, and has placed that judicial function nowhere else except as the Commissioner may deal with such controversies by administrative methods, in an administrative capacity and without judicial or quasi-judicial safeguards. If a function which would otherwise be exercised in this case by a court in a judicial capacity, is transferred by statute for determination to the Commissioner of Education, there is no basis for concluding that its nature is thereby changed so as to make it an administrative function instead of one which is judicial. The Commissioner cannot be vested with the power and duty of a judge without at the same time being obliged to act judicially. It is -common practice for the Legislature to assign judicial functions to administrative bodies or officers, but that does not make the function administrative in nature. Courts have been careful to distinguish between functions which are judicial, although performed by administrators, from those which are merely administrative and therefore subject to being executed without a hearing or the taking of testimony or other attributes of the administration of justice under law. In Joint Anti-Fascist Refugee Committee v. McGrath (supra, p. 168), it is said in the opinion of Justice Fbaxkfurteb, : “ Congress has often entrusted, as it may, protection of interests which it has created to administrative agencies rather than to the courts. But rarely has it authorized such *153 agencies to act without those essential safeguards for fair judgment which in the course of centuries have come to be associated with due process [citing cases].”
In Morgan v. United States (304 U. S. 1, 18), it was said in an opinion by Chief Justice Hughes : “ The right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one.” It was further said in that opinion (pp. 14-15): “ The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand ‘ a fair and open hearing, ’— essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an ‘ inexorable safeguard.’ [citing cases].” It would be easy to multiply decisions and statements of this character by citations from our State courts. In Kade v. Greenhut Co. (193 App. Div. 862, 868), for example, it was stated in a case involving the State Industrial Commission: “ This would seem to impose the duty upon this court, in ordinary matters of appeal, of determining whether there was evidence ‘ supporting or tending to sustain a finding of fact,’ and the United States Supreme Court, in Ohio Valley Co. v. Ben Avon Borough (253 U. S. 287), holds squarely that it is necessary to due process of law that ‘ the State must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts.’ ”
In Matter of Peters v. New York City Housing Auth. (307 N. Y. 519), an order of the Appellate Division was reversed upholding the Gwinn Amendment (66 U. S. Stat. 403) forbidding the occupancy of housing units constructed with Federal aid1 ‘ by a person who is a member of an organization designated as subversive by the Attorney General ”. The question of *154 constitutionality was reserved pending remission to Special Term to ascertain whether it was necessarily involved, but it is noteworthy that the Appellate Division upheld the constitutionality only for the reason that organizations on the Attorney General’s list “ demanding a hearing are entitled to have one before the Attorney General of the United States, at which they may be represented by counsel, introduce evidence and examine witnesses; and they may obtain a transcript of the proceedings (18 Federal Register 2619) ” (283 App. Div. 801, 802). The Justice who decided the proceeding at the Kings County Special Term considered that no such hearing was provided, and wrote a scholarly and informative opinion on the subject which is relevant here (9 Misc 2d 942). Taxpayers are entitled to due process of law quite as much as though they were charged with being subversives.
Pointing out that due process is not confined in its operation to courts of law, this court said in Stuart v. Palmer (74 N. Y. 183, 190): “ This provision is the most important guaranty of personal rights to be found in the Federal or State Constitution. It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall be deprived of his life, liberty, or property. This the Legislature cannot do nor authorize to be done.”
In Joint Anti-Fascist Refugee Committee v. McGrath (supra, pp. 162-163), it was further said by Justice Frankfurter : “Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, ‘ due process ’ is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. ’ ’
It is incorrect to state as the Appellate Division has done that the Legislature has here authorized the Commissioner of Education to decide this issue without holding a hearing. On the contrary subdivision 12 of section 2215 of the Education Law provides that a district superintendent of schools shall have the power and duty ‘1 To take and report to the commissioner of education under the direction of such commissioner testimony in a case on appeal. In such a ease or in any matter or proceeding to be heard or determined by the district superintendent, he may issue a subpoena to compel the attendance of the wit *155 ness.” The Legislature thus supplied a procedure for taking testimony, involving the examination and cross-examination of witnesses, where due process requires it. The discretion given to the Commissioner in ordering such proceedings is not absolute. The legislative intent was that the Commissioner would direct such procedure in quasi-judicial hearings where it is necessary in order to get at the facts. The 1947 printed comments of the Commissioner of Education state concerning subdivision 12 of section 2215: 11 It is not the design of this section to supersede the present mode established by regulation of presenting testimony upon application in the form of written affidavits, but to enable the Commissioner of Education to obtain additional light, where the written evidence is conflicting, ambiguous, or otherwise unsatisfactory, by the oral examination of witnesses before a superintendent.” (Handbook, 1947 Buies of Commissioner of Education, pp. 7, 9.)
It would be difficult to express more exactly the shortcomings of the affidavits that were before the Commissioner when he decided this proceeding. They were “ conflicting, ambiguous, or otherwise unsatisfactory.” This comment does not appear in the 1955 Rules of the Commissioner, which state categorically (rule 18, subd. d): “ Testimony is not taken and all necessary factual matters should be presented in affidavit form or in the form of exhibits.” This rule does not follow the statute: it takes no account of section 313 in cases of discrimination which are to be tried on testimony before the Board of Regents; it contains no reference to subdivision 12 of section 2215 just mentioned, where the Legislature has supplied a procedure exactly fitted to this situation. Moreover, this rule purports to have been adopted only pursuant to general power conferred by section 311 to adopt rules regulating practice. Such rules must be reasonable and adapted to the matter at hand, as well as in accord with statute and fundamental law (Matter of Elite Dairy Prods, v. Ten Eyck, 271 N. Y. 488; Matter of New York Water Service Corp. v. Water Power & Control Comm., 283 N. Y. 23; Matter of Village of Bronxsville v. Maltbie, 284 N. Y. 206, 215, supra). Even where a statute is specific with respect to procedure which administrative tribunals may adopt (which § 311 is not) or the practice is provided by the statute itself, due process of law must be observed (Matter of Central Hanover *156 Bank & Trust Co., 274 App. Div. 772, appeal dismissed 298 N. Y. 902; 299 N. Y. 697, revd. 339 U. S. 306).
If testimony had here been taken under order of the Commissioner by a district superintendent of schools under subdivision 12 of section 2215, opportunity would have been allowed for examination and cross-examination of witnesses, the Commissioner’s time would not have been consumed in hearing testimony, but it would have been his duty to render his decision after reading the evidence taken by the superintendent, and on the basis of such evidence (Matter of Kilgus v. Board of Estimate, 308 N. Y. 620). That is familiar practice in the field of administrative law where testimony is taken by a trial examiner. The Legislature appears to have contemplated that a district superintendent would be the trial examiner, but the rule of the Commissioner takes no account of that.
It has been well said by Robert M. Benjamin in his report to Governor Lehman on Administrative Adjudication in New York State (Yol. 1, p. 86): “ The presentation of evidence and argument by the parties and the testing of contrary evidence and argument have advantage beyond the advantage of satisfying the legitimate feelings of the parties. Procedure of this kind will go far toward assuring informed and correct administrative action, to the benefit alike of the parties and of the administrator. Neither judicial review nor other judicial remedy (e.g. an action for damages) can offer a substitute, wholly satisfactory either to the parties or to the administrator, for an administrative procedure calculated to reach the correct result in the first instance. ’ ’
Here the Commissioner of Education finds the facts; if there be substantial evidence to go upon, his findings of fact are final. This is true regardless of what power of review the courts may have over his action in view of section 310 of the Education Law (Matter of Ross v. Wilson, 308 N. Y. 605, supra), and regardless of whether his jurisdiction over district elections under section 2037 excludes that of the Supreme Court (cf. Matter of Malloy, 278 N. Y. 429). Unless the parties are accorded a hearing for the determination of the facts, in accordance with the commonly accepted meaning of that term, it is impossible to be assured that a correct result is reached. This 1955 rule 18 (subd. d) is valid and applicable in purely administrative hearings and in *157 quasi-judicial proceedings where there is not a triable issue of fact, but where there is a triable issue of fact in a quasi-judicial controversy resort must be had to subdivision 12 of section 2215 of the Education Law. That is the legislative procedure provided to protect the constitutionality in such situations.
The problem in this case seems to arise from fear on the part of the Commissioner or his counsel that if witnesses are to be called where it is appropriate and necessary, it would be necessary to call witnesses in every administrative or quasi-judicial matter arising in the administration of the affairs of the Department of Education. Nothing could be farther from the case. Such a view overlooks the flexibility of adaptation of due process, and manifests an unwillingness to adjust procedures to the nature and necessities of the case. To say that if evidence is taken in one situation it must be taken in every situation would, for example, nullify court procedure by summary judgment, or the granting of relief on motion on affidavits under rule 108 of the Rules of Civil Practice. The Kuhn case (1 A D 2d 533, 2 N Y 2d 749, supra) is an example of where it is not necessary to take evidence in a quasi-judicial hearing. There the defects in the district election were claimed to consist in the marking of the ballots. The ballots were in evidence before the Commissioner. The oral evidence could not have added to or detracted from the evidentiary basis for the decision. The present case is different. Where reviewability in court depends upon the Commissioner’s determination being classified as “ purely arbitrary ” (Matter of Ross v. Wilson, 308 N. Y. 605, supra), a ruling must be so classified which denies to taxpayers their constitutional rights in the presentation and testing of evidence, in the process of determining whether the jurisdictional facts exist on the basis of which their properties are to be charged with the cost of this improvement. These taxpayers did not have a constitutional right to a district meeting to approve the project. But the Legislature required a district meeting for that purpose, and the taxpayers had a constitutional right to fair play in the procedure by which it was decided whether the proposition was carried at the meeting. If the Commissioner’s rule 18 (subd. d) stands in the way of that by prohibiting the testimony of witnesses, then in such cases the rule is void. The appealability of the Appellate Division’s *158 order is established, in my view, upon the same basis as in Matter of Hecht v. Monaghan (supra) provided only that appellants have not waived the right to insist upon their constitutional right to the examination of witnesses.
The brief for appellant O’Brien states that “ From the commencement of this action before the Commissioner of Education, and continuously thereafter, appellant has excepted to the absence of an administrative hearing. The asserted right to such a hearing has been premised upon the decision of this Court in Matter of Hecht v. Monaghan I have not found in the record before this court anything from which it appears in writing that these appellants did object before the Commissioner, to being foreclosed of the opportunity to cross-examine the persons who made the affidavits submitted by the Board of Education, or that appellants demanded the right to examine witnesses of their own. Nowhere does it appear that they asked the Commissioner to refer the taking of testimony to a district superintendent of schools under subdivision 12 of section 2215 of the Education Law. It may be that they did urge the Commissioner orally to do these things, but unfortunately for them the record does not show it. Possibly they were deterred from making such a demand by the Commissioner’s rule 18 (subd. d), believing that if they did it would be refused. That is not a substitute for making the demand. Appellants’ position in this court appears to be based upon the invalidity of that rule. In my view the rule is not void in its entirety, but only insofar as it would apply to a quasi-judicial proceeding before the Commissioner where the facts or inferences of fact are incompletely established or are conflicting. In by no means every instance, even in quasi-judicial proceedings, is the Commissioner obliged to take testimony. Therefore it seems to me that mere reliance on the invalidity of the rule is not enough. It was incumbent on appellants to request or demand of the Commissioner that the testimony of witnesses be taken. If they desired to cross-examine the witnesses for the Board of Education, appellants should have said so to the Commissioner and insisted upon then-right to that procedure, and if they did that they should have seen to it that the circumstance of their demand and the Commissioner’s refusal became part of the record in the court proceeding. Even the petition in this article 78 proceeding does *159 not allege expressly that such a demand was made upon the Commissioner. The order dismissing the petition was entered on the pleadings. It does not appear that appellants applied at Special Term to have testimony taken in this article 78 proceeding to show that they did demand of the Commissioner that he allow them to examine or to cross-examine witnesses when they were before him. In view of the absence from the record of anything to show that the question was raised, I concur for dismissal of the appeal. The Appellate Division held that appellants had no constitutional right to a hearing, in the traditional sense, and in this I think that they erred.
This case touches one of the most fundamental legal questions of the day. It is not confined to the Education Department but relates to whether and to what extent our traditional liberties are carried forward into the practice of administrative tribunals, which are so large a part of today and tomorrow. What has been said in this opinion relates to the Commissioner of Education in his official capacity, and is in no manner directed personally at the distinguished gentleman who occupies that office.
For the reasons stated, I concur in the dismissal of this appeal.
Chief Judge Conway and Judges Desmond, Dye, Froessel and Burke concur with Judge Fuld; Judge Van Voorhis concurring in a separate opinion.
Appeal dismissed, without costs, upon the ground that no constitutional question is directly involved.

 Whether or not the “ exclusive ” jurisdiction which section 2037 of the Education Law purports to confer on the Commissioner conflicts with section 1 of article YI of the State Constitution vesting in the Supreme Court general jurisdiction in law and equity, is not considered (cf. Barone v. Ætna Life Ins. Co., 260 N. Y. 410; Matter of Stilwell, 139 N. Y. 337).