opinion of the court
Bentley Kassal, J.
ISSUE
The principal issue on this motion for summary judgment is whether a strike by a contractor’s employees acts to relieve the contractor of its obligation to perform the services required by the contract.
FACTS
Pursuant to public bidding, the defendant Moran Towing & Transportation Co., Inc. (Moran) contracted with the City of New York (City) to provide refuse disposal barge towing services for the Department of Sanitation (Sanitation) from July 1,1978 through June 30,1979. However, Moran ceased to provide such services on April 1,1979 when members of *889 defendant Local 333, Marine Division, International Longshoremen’s Association, went on strike against Moran and other tugboat operators in New York Harbor.
After the strike had continued for almost three weeks, the City commenced this action by order to show cause, with a temporary restraining order against the strike as it affected Sanitation’s towing operation. On the return date of the motion, the temporary restraining order was vacated and the City’s application for preliminary injunction was denied.
The City served an amended complaint, seeking specific performance of the contract and several million dollars damages for its breach. The City thereupon obtained a second order to show cause, containing a temporary restraining order, directing Moran to perform its contract obligations or turn over three tugboats for the City to operate. Moran consented to the latter relief and the three tugboats were turned over to the City on May 9,1979. The City was unable to operate the tugboats until May 22, when City employees, suspended for refusing to cross a picket line, returned to work. The strike ended on June 27.
Moran served its answer on June 25, 1979 asserting the following affirmative defenses: failure to state a cause of action; supervening impossibility of performance, due to the strike and violence and threats of violence; waiver of the right to require performance by reason of certain labor provisions in the contract; performance; unenforceability of the agreement as a contract of adhesion; and failure to mitigate damages. The City now moves for summary judgment on the issue of liability and seeks a hearing to determine damages.
LAW
A. Impossibility of Performance
In general, one who contracts to render a performance or produce a result for which it is necessary to obtain the cooperation of third parties is not excused by the fact that they will not co-operate. This is a risk commonly understood to be the promisor’s, in the absence of a provision to the contrary. If workmen strike, the promisor must procure others, in *890 duce the strikers to return by satisfying their demands or by other means, provide alternative services or otherwise meet its obligations to the promisee. (See, generally, Van Etten v Newton, 15 Daly 538, affd 134 NY 143; Toyo Cotton Co. v Cotton Concentration Co., 461 SW2d 116,118 [Tex]; Schaefer v Brunswick Laundry, 116 NJL 268; 6 Corbin, Contracts, § 1340, 1980 Supp.)
As a general rule, supervening impossibility does not excuse the nonperformance of a contract. Although a number of exceptions to this rule have developed, the category of strikes is not included among them. (Schaefer v Brunswick Laundry, supra; Kinser Constr. Co. v State of New York, 125 NYS 46, affd 145 App Div 41, affd 204 NY 381; 10 NY Jur, Contracts, §§ 356, 357, 1980 Supp.)
While a promisor/contractor may limit the risk it assumes through express provisions relating to strikes, fires and other causes beyond its control (which provisions the courts have honored), the occurrence of a strike does not excuse nonperformance in the absence of such an agreement. (Normandie Shirt Co. v J.H. & C.K. Eagle, 238 NY 218; Atwater & Co. v Panama R.R. Co., 255 NY 496; 3A Corbin, Contracts, § 642; Barry v United States, 229 US 47, 51; Schaefer, Brunswick Laundry, supra; 10 NY Jur, Contracts, § 364.) As conceded by Moran’s vice-president in his affidavit in opposition, this contract contained “no specific provision dealing with or otherwise allocating between the parties the risk of a strike or its consequences”.
Moran entered into a written contract in which it unconditionally agreed to perform towing services. Its obligations were set forth in a number of provisions, including, inter alia:
“5.0 (h) — The contractor shall do all work and render all services necessary and incidental to the full and faithful performance of this contract.
“19.0(e) — [B]idder * * * has made its own independent determination as to the * * * difficulties which may be encountered, and which must be surmounted in performing the work and completing the proposed contract.
*891 “Article 4. (E) — In the event of the Contractor’s failure to furnish promptly the work or services ordered under this contract, the City shall have the right to engage such necessary towing, * * * and emergency services at the expense of the Contractor,”.
The only contractual provision which even incidentally mentions strikes is the following ambiguous statement: “Article 4. (Q) — The Contractor * * * shall not employ on the work: * * * (b) Any labor, * * * whose employment, or utilization during the course of this contract, may tend to or in any way cause or result in strikes, work stoppages, delays, suspension of work * * However else this provision may be interpreted, it clearly does not excuse Moran’s failure to perform under the facts of this case and, apparently, was not intended to do so.
B. Contract of Adhesion
“Contracts of adhesion” are contracts prepared by one party and presented to another, in a disadvantageous bargaining position, on a “take it or leave it” basis. (Barrette v Home Lines, 168 F Supp 141,143, n 4; Standard Oil Co. of Calif. v Perkins, 347 F2d 379, 383, n 5.) However, where parties voluntarily deal at arm’s length or in a competitive marketplace, no adhesion contract exists. (Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 523.) Nor does the defense of contract of adhesion apply to publicity bid contracts, in the absence of extraordinary circumstances. (Meaott Constr. Corp. v Ross, 100 Misc 2d 767, 772.) Since the supplier of the services, Moran, was under no obligation to enter a bid, the City’s acceptance of Moran’s voluntary offer constituted a binding agreement, untainted by being one of adhesion.
CONCLUSION
The other defenses raised in Moran’s answer have received little more than lip service on this motion and are insufficient to defeat the City’s claim. The affirmative defenses discussed in this decision are insufficient as a matter of law and, since there are no triable issues of fact, the motion for summary judgment is granted.
*892 In view of the admittedly complex questions as to proof of damages, a trial of that issue is clearly warranted, pursuant to CPLR 3212 (subd [c]).
Settle order, providing for the completion of discovery on the outstanding issues and a trial on the issues of damages.