CITY OF NEW YORK et al., Respondents, v LOCAL 333, MARINE DIVISION, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Defendant, and MORAN TOWING & TRANSPORTATION CO., INC., Appellant.

First Department, March 24, 1981

APPEARANCES OF COUNSEL

*Herbert M. Lord* of counsel *(James W. Lynch* and *Peter L. Hessellund-Jensen* with him on the brief; *Burlingham Underwood & Lord,* attorneys), for appellant.

*Stephen P. Kramer* of counsel *(Leonard Koerner* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

SILVERMAN, J.

This is an appeal by defendant Moran Towing & Transportation Co., Inc., from an order of the Supreme Court (106 Misc 2d 888) granting partial summary judgment to plaintiffs against Moran on the issue of Moran's liability.

In our view summary judgment should not have been granted at this stage.

Pursuant to public bid, Moran entered into a contract with the City of New York to furnish towage services for the Department of Sanitation of the city from July 1, 1978 to June 30, 1979; these services involved the provision of tugs, etc., necessary to tow sanitation barges in the Port of New York. On April 1, 1979 a port-wide strike was called by defendant Local 333, United Marine Division, International Longshoremen's Association, AFL-CIO against approximately 30 employer members of the Marine Towing and Transportation Association, of which Moran was a member. As a result, Moran did not render towing services to the city from April 1, 1979 until May 22, 1979 when, Moran having turned over three tugs to the city pursuant to an order on consent and the Supreme Court having signed a temporary restraining order prohibiting picketing, the city began operating three tugs. Having originally sued the union, the city amended its pleadings to seek specific performance and damages from Moran. Before any disclosure or discovery proceedings, the city moved for summary judgment and Special Term granted it partial summary judgment as to liability, holding that the strike did not excuse Moran from liability for damages for failure to perform.

The contract contained no express provision either excusing or not excusing Moran from performance in the event of a strike. While the rule as to when (in the absence of an express provision in the contract) claimed "impossibility" excuses nonperformance by a promisor has sometimes been stated in terms of whether the impossibility was foreseeable, a fuller statement of the rule gives weight to a consideration that is always fundamental in contract disputes —the reasonable expectations of the parties, or what the court may have deemed that those expectations would have been had the parties considered the matter.

Williston, Contracts (3d ed, vol 18, § 1931) thus states the rule as to supervening impossibility as an excuse for nonperformance: "The important question is whether an unanticipated circumstance has made performance of the

promise vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract. If so, the risk should not fairly be thrown upon the promisor."

Again in *119 Fifth Ave. v Taiyo Trading Co.* (190 Misc 123, 125, affd 275 App Div 695) Judge BENVENGA said at Special Term: "The doctrine is based upon the theory of an implied term which the law imputes to the parties in order to regulate a situation which, in the eyes of the law, the parties themselves would have regulated by agreement if the necessity had occurred to them (McNair, Legal Effects of War [1944 ed.], pp. 143, 151; Rogers, Effect of War on Contracts [1940 ed.], pp. 50-51). It applies where, since the formation of the contract, there has supervened an event or circumstance of such a character that reasonable men in the position of the parties would not have made the contract, or would not have made it without inserting some appropriate provision, if they had known or anticipated what was going to happen (McNair, Legal Effects of War [1944 ed.], p. 153)." (Cf. references to Columbia and Harvard Law Reviews in *Kinzer Constr. Co. v State*, 125 NYS 46, 50-51, affd 145 App Div 41, affd 204 NY 381.)

Again as stated in Williston (vol 18, § 1951A): "In light of the trend of the law governing impossibility, there seems no reason why strikes should not be deemed an excuse on the basis of the failure of a means of performance assumed as essential by the parties to the contract. However, where foreseeable, the result may be different."

Precisely in relation to who would bear the burden of a loss caused by a maritime strike, Judge RYAN stated in *Badhwar v Colorado Fuel & Iron Corp.* (138 F Supp 595, 607-608, affd 245 F2d 903): "Maritime strikes, authorized and unauthorized, occur quite frequently. They vary considerably in duration, from hours to weeks to months as did the strike considered at bar. The certainty of occurrence or duration of a strike is impossible to foretell * * *

"Rather than mechanically apply any fixed rule or law, where the parties themselves have not allocated responsibility, justice is better served by appraising all of the circumstances, the part the various parties played, and

thereon determining liability. This may well serve to explain any apparent division of authority in this area of the law."

We think in the present case an appraisal of all the circumstances requires a further exploration of the facts than has been possible on this motion for summary judgment made before disclosure proceedings. We cannot say, as a matter of law, that in the case of this port-wide tugboat strike the parties reasonably expected that Moran would still perform or at least pay damages.

True the contract provided that if Moran did not perform the contract, the city could do so and hold Moran for the additional expenses. But was this provision intended to apply to a strike which tied up all tugboat services in the Port of New York? In that connection, we note the following circumstances:

(a) The strike was a port-wide strike by all members of this port-wide union against all tugboat operators. There was apparently no practical way for Moran to arrange to furnish tugboat service to the Department of Sanitation until May 22, 1979, or at least so Moran alleges. This was not just a strike of Moran's employees or just against Moran. A union official has stated that the union would not have settled with Moran alone or permitted Moran to furnish tugboat services to the Department of Sanitation.

(b) In a previous tugboat strike in 1970, the union had permitted tugboat services to be furnished to the Department of Sanitation.

(c) The contract forbade Moran to employ "[a]ny labor, materials or means whose employment, or utilization during the course of this contract, may tend to or in any way cause or result in strikes, work stoppages, delays, suspension of work or similar troubles by workmen employed by the Contractor * * * or by any of the trades working in or about the buildings and premises where work is being performed under this contract, * * * or on any other building or premises owned or operated by the City of New York." Indeed, in this connection, there is evidence that an assistant to the Deputy Mayor for Operations called Moran's Captain McVay and advised that the union had stated that

"If the City attempted to move garbage itself, pickets of Local 333 would be in front of every sanitation facility and the sanitation union members would not cross the line."

(d) All these factors must be considered against the background of the history of labor relations affecting the City of New York in recent times, of which we may take judicial notice, including the city's own actions in relation to attempting or not attempting to operate services in the face of a city-wide strike.

We are unable to say on the present record, as a matter of law, that Moran was not excused from performance or liability by the strike.

The order of the Supreme Court, New York County (KASSAL, J.), entered October 2, 1980, granting plaintiffs' motion for summary judgment on the issue of defendant Moran's liability for damages should be reversed, on the law, and plaintiffs' motion for summary judgment should be denied, without costs.

BIRNS, J. P., SANDLER, CARRO and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on October 2, 1980, reversed, on the law, and plaintiffs' motion for summary judgment denied, without costs and without disbursements.