OPINION OF THE COURT
Benjamin F. Nolan, J.
On August 31, 1978, defendant Efrain Troche signed a rebate contract with plaintiff Hygrade Milk & Cream Co., Inc. (hereinafter Hygrade), pursuant to which defendant Troche promised to purchase milk exclusively from Hygrade for sale in his retail grocery store business — a promise which also bound the defendant My Four Children’s Supermarket, Inc., as the owner of record of the business. In return, defendants were to be paid $12,500, which was to be a loan reducible by rebates on each quart of milk purchased over a stated period. A confession of judgment was to be executed simultaneously as security for the loan.
It appears however that on August 31, 1978, Troche signed two affidavits of confession of judgment, each in *502 sum of $12,500; each, set forth on a standard business form containing the affidavit of confession of judgment on one side and the judgment by confession on the reverse side; each, identical in every respect. Each recites that the underlying debt arose from a loan made to Troche in the sum of $12,500 on or about August 31, 1978 to enable Troche to purchase merchandise inventory and otherwise improve the same for a business at 209 East 167 Street, Bronx, New York, in which Troche had a financial interest. Neither affidavit however refers expressly to the rebate contract of August 31, 1978. Yet, in an affidavit sworn to on May 15, 1980, plaintiffs’ attorney identified the rebate agreement of August 31, 1978, between Hygrade and Troche, as the contract from which each loan derived; and, he attached a copy of said contract to his affidavit. But, each affidavit of confession of judgment is captioned: “Sunbeam Farms, Inc. against Efrain Troche and My Four Children’s Supermarket, Inc.” It bears repeating that the rebate contract signed by Troche on August 31, 1978, was with Hygrade and not with Sunbeam.
Immediately, one wonders whether defendants received $12,500 twice. This cannot be ascertained from a review of any of plaintiffs’ papers, unless the answer is presumed to be “yes” solely from the existence of the two separate affidavits of confession of judgment. But, in the copy of a letter of defendants’ attorney, attached to his affidavit of December 15,1980, he indicates that the answer is “yes” — that $12,500 was paid for the location, and $12,500 was paid as a loan to be repaid on the basis of rebates over 18 months. Nowhere, however, is there any indication of who or what entity paid these sums or to which defendant they were paid, or what each payment specifically covered.
Under the rebate contract, defendant Troche agreed to execute a confession of judgment which Hygrade had the express right to “enter and execute upon its option and determination”. The right to enter and execute upon the confession of judgment was in absolute terms. It was not even conditioned upon a breach of the contract.
On April 22,1980, Sunbeam commenced each of the two within actions. Each was based upon a separate confession of judgment signed on August 31, 1978. Each judgment *503 reflected that the original obligation had been reduced from $12,500 to $8,635.60 by rebates and credits. In subsequent motion affirmations, counsel for plaintiffs affirmed that each action had been commenced by the filing of a confession of judgment. In other words, without any allegation of a breach of contract or any other basis for the entry of the judgments by confession, and without the service of any process upon the defendants, judgments were entered under the heading of each action on April 22, 1980, and immediately turned over to a Marshal for execution. These procedures, despite their seeming lack of due process, are not necessarily unconscionable under section 2-302 of the Uniform Commercial Code. (CPLR 3215, subd [h], par 1; Architectural Cabinets v Gaster, 291 A2d 298 [Del]; Gimbel Bros. v Swift, 62 Misc 2d 156.) A judgment by confession for money due may be entered “without an action” pursuant to CPLR 3218, as made applicable to the Civil Court by section 1403 of thé New York City Civil Court Act, upon the filing of an affidavit executed by the defendant “stating concisely the facts out of which the debt arose and showing that the sum confessed is justly due”. (CPLR 3218, subd [a], par 2.)
Having been alerted for the first time by the activity of the Marshal, defendants moved for an order vacating the judgments and authorizing them to interpose answers. Subsequently, both actions were consolidated, the judgments were vacated, defendants were authorized to and did interpose answers, and the caption of the consolidated action was amended to add Hygrade as a plaintiff. However, no complaint has ever been served and filed by Hygrade. Alarmed because of the belief that the named defendants sold the business to buyers they claim they cannot identify, plaintiffs included such allegedly unidentified new owners as additional party defendants under fictitious names. And now, they move upon an affidavit of counsel for an order (a) setting aside that sale, (b) allowing re-entry of the judgments entered on April 22, 1980, (c) allowing plaintiffs to execute on said judgments, (d) holding defendant in civil contempt, and (e) directing defendant to cease and desist from any operation of the retail grocery store business. However, no affidavit from a repre *504 sentative of either plaintiff was submitted in support of the motion.
Defendants oppose the motion alleging through an affirmation of counsel (1) that the rebate contract and the affidavits of confession of judgment were void because they were signed in blank, (2) that provisions of the underlying rebate contract are unconscionable, (3) that the contract is illegal because it is in restraint of trade, (4) that the confessions of judgment are defective since they are in the name of Sunbeam instead of Hygrade, and (5) that plaintiffs have not availed themselves of the requisite liens under the Uniform Commercial Code to protect whatever interests they claim to be entitled to in the res of the retail grocery store business. Here, too, no affidavit of any party defendant was submitted in opposition to plaintiffs’ motion.
In Jones v Star Credit Corp. (59 Misc 2d 189, 191) Justice Sol Wachtler traced the progress of commercial morality from the time when the common law allowed the shield of caveat emptor to protect the unscrupulous to the enactment of section 2-302 of the Uniform Commercial Code which now warns not only the buyer but also the seller to beware. Section 2-302 of the Uniform Commercial Code is designed to carry equity practice into the sales field by condemning as unconscionable an excessively one-sided oppressive agreement which imposes upon one party a burden which deprives that party of meaningful choice, together with contract terms which are unreasonably favorable to the other party. (American Home Improvement v MacIver, 105 NH 435; Frostifresh Corp. v Reynoso, 52 Misc 2d 26, revd on other grounds 54 Misc 2d 119.)
Defendants complain that their rebate contract with Hygrade was in restraint of trade because it compelled them to buy milk solely from Hygrade or go without milk since no other milk company would sell milk to them. Whether the contract was in restraint of trade, in its inception or in its application, is an. issue which is not factually made out and will have to be resolved in another forum since it appears to be beyond the jurisdiction of this court, and in any event need not be reached here to finally determine this motion.
*505 The most serious defect in each of plaintiffs’ actions is that the considerations for the confessions of judgment recited in the affidavits of confession of judgment relate to the contract between defendants-and Hygrade and not to any contract between defendants and Sunbeam. There is no evidence that any of Hygrade’s rights have ever been assigned to Sunbeam. And, the rebate contract between defendants and Hygrade provides that the contract “may not be altered, changed or transferred without the written consent of the parties”. No such written consent has been shown.
Another defect is the failure of plaintiffs to show that any demand was made for the balance for which the judgments by confession were entered. Each affidavit of confession of judgment expressly provided that “pursuant to the terms of the loan, the monies advanced are due on demand”. (Emphasis supplied.)
Next, the terms of the rebate contract are so clearly unconscionable under subdivision (1) of section 2-302 of the Uniform Commercial Code, that there is no need for the kind of formal inquiry about the “commercial setting” of the rebate contract which the court has discretion to conduct under subdivision (2) of section 2-302 of the Uniform Commercial Code where deemed essential.
Most of the unconscionable provisions of the rebate contract are manifest. Hygrade was authorized to enter the confession of judgment and execute upon it “upon its option and determination” whether or not defendants breached the underlying rebate contract.
Additionally, the delivered price for one-quart containers of milk, which was to be the measure of rebates and price increases was left blank in the rebate contract. Hygrade was authorized to charge any price it chose, and to charge increases even when related to foreseen circumstances, and, after the rebate period, defendant Troche would continue to be bound to pay Hygrade’s delivered price without rebate — a delivered price which was to be calculated upon a base delivered price which, as aforesaid, was left blank in the rebate contract. Section 2-302 of the Uniform Commercial Code is intended to encompass the *506 price term of an agreement. “Indeed, no other provision of an agreement more intimately touches upon the question of unconscionability than does the term regarding price” (Jones v Star Credit Corp., supra, p 191; Central Budget Corp. v Sanchez, 53 Misc 2d 620; Matter of State of New York v ITM, Inc., 52 Misc 2d 39; Williams v Walker-Thomas Furniture Co., 350 F2d 445). When the price term is left blank there is no way to evaluate the reasonableness of the price or of conditions which are directly related to the price. While there can be such a thing as an “open price term” under section 2-305 of the Uniform Commercial Code, there is no evidence herein that an “open price term” was ever intended. Yet, even if it was, such provision would not be enforceable because the party which had the authority to set the price also had the power to act arbitrarily (American Trading & Prod. Corp. v Fairfax County Bd. of Supervisors, 214 Va 382).
Besides, defendants were barred from any transfer, sale, assignment, or discontinuance of the business in any manner unless consented to by Hygrade in writing. This, coupled with Hygrade’s right to enforce a one-sided judgment by confession at its option must be condemned, particularly, where as here the potential for “unfair surprise” is apparent as of the making of the contract. (Cf. Zapatha v Dairy Mart, _Mass_, 408 NE2d 1370.)
The foregoing provisions were oppressively weighted against the defendants, who were not represented by counsel when the rebate contract and the affidavits of confession of judgment prepared by counsel for plaintiffs were signed (see Jones v Star Credit Corp., supra).
The underlying rebate contract was also unconscionable because it offended section 2-718 of the Uniform Commercial Code in that its damages provisions were so unreasonably excessive that rather than being good faith attempts to pre-estimate damages they served instead as penalties. (See Equitable Lbr. Corp. v IPA Land Dev. Corp., 38 NY2d 516, 521, 523; Wirth & Hamid Fair Booking v Wirth, 265 NY 214, 223; Nu Dimensions Figure Salons v Becerra, 73 Misc 2d 140.)
It was also unconscionable as a contract of “adhesion” — a contract prepared by Hygrade and presented to defen *507 dant Troche in a disadvantageous bargaining position on a “take it or leave it” basis. (City of New York v Local 333, Mar. Div., Int. Longshoremen’s Assn., 106 Misc 2d 888, 891.)
Finally, plaintiffs’ efforts to reach the transferees of the retail grocery business in these actions on grounds that the transfer violated the bulk sales provisions of section 6-101 et seq. of the Uniform Commercial Code are unavailing. There is no indication that at the time of transfer there was an awareness on the part of the transferor and transferee that the affidavits of confession of judgment had been activated to produce the eventual judgments by confession. Furthermore, if plaintiffs possessed a security interest in the transaction, they should have filed the financial statement called for under section 9-302 of the Uniform Commercial Code. Counsel for defendants avers that the retail milk business was transferred to Antonio Padilla on July 17, 1979, and that since that date Hygrade continued to sell and deliver milk to the store location and is thus estopped from denying knowledge that Padilla was the new owner. Not having denied this, plaintiffs must be held to have been aware of this transfer at the time when it caused the two confessions of judgment to be entered against the named defendants on April 22,1980, and when it thereafter listed fictitious names as additional defendants to identify the new owners of the business.
Plaintiffs cannot remain in the shadows speaking only through their counsel. Nowhere in the multitude of papers submitted on this motion does any individual identify himself as a representative of either Sunbeam or Hygrade and allege under oath the facts which would be minimally necessary to justify the grant of this motion. Where, as here, this is done so blatantly, plaintiffs should not be heard to complain if this court leaves them where it finds them, and refuses to enforce the contracts as a whole because they are permeated with unconscionability. (See Consolidated Laws Service’s Uniform Commercial Code, § 2-302, Uniform Laws Comment 2, p 262.) Accordingly, plaintiffs’ motion is denied.