■ CITY OF NEW YORK, Respondent, v LONG ISLAND AIRPORTS LIMOUSINE SERVICE CORP. et al., Appellants. In the Matter of CITY OF NEW YORK, Respondent, v WILLIAM C. HENNESSY, as Commissioner of Transportation of the State of New York, et al., Appellants. — Appeal from an order of the Supreme Court at Special Term (Kahn, J.), entered September 21, 1981 in Albany County, which granted plaintiff's motion for summary judgment. Appeals from a judgment of the Supreme Court at Special Term (Kahn, J.), entered September 21, 1981 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Commissioner of Transportation. Defendant-respondent Long Island Airports Limousine Service (hereinafter LIALS), which operates an omnibus route from points in Nassau and Suffolk Counties to Kennedy and La Guardia airports in New York City, was originally granted a temporary certificate of public convenience and necessity to operate the route by the Public Service Commission in 1961. By contract dated November 25, 1968, plaintiff-petitioner City of New York (hereinafter city) then granted LIALS a franchise to operate along the route in the city, and in 1971, defendant-respondent Commissioner of the Department of Transportation (hereinafter commissioner), as successor to the Public Service Commission, granted LIALS a permanent certificate of public convenience and necessity to operate the route. Thereafter, on May 26, 1977, the city's board of estimate canceled LIALS' franchise and refused to renew it upon its expiration on December 31, 1977, and the city further requested the commissioner to revoke LIALS' certificate of public convenience and necessity. While the commissioner was considering this latter request, the city commenced an action against LIALS in June of 1978 to enjoin LIALS from operating on the city's streets without a franchise and to recover damages under the then-expired franchise contract. Thereafter, the commissioner ended his inquiry by ruling that LIALS' certificate could not be revoked, and ultimately the Court of Appeals dismissed the city's action without prejudice because there had been a failure to join a necessary party, i.e., the commissioner (see *City of New York v Long Is. Airports Limousine Serv. Corp.,* 48 NY2d 469). On February 8, 1980, the commissioner denied the city's petition for a rehearing on the commissioner's above-noted ruling. With these circumstances prevailing in April of 1980, the city commenced an action in New York County wherein it seeks, *inter alia,* an injunction against LIALS' operation on the city's streets, compensation allegedly due from LIALS under the franchise contract, and declarations that the commissioner's determination that LIALS' certificate could not be revoked does not authorize LIALS to operate over the city's streets without the city's consent and that LIALS' certificate shall be suspended as to the portion of the route within the city. A short time thereafter, in June of 1980, the city also commenced an article 78 proceeding in Albany County wherein it challenges the commissioner's denial of its petition for a rehearing on the order refusing to revoke LIALS' certificate and seeks annulment of the commissioner's orders and termination of that part of LIALS' certificate which covered operations in

the city. Upon motion of the commissioner, the civil action and the article 78 proceeding were later consolidated for joint trial in Albany County, and the city moved for summary judgment granting the relief requested in its complaint and its petition. Special Term then granted the city's motion, and the instant appeals ensued. Considering initially two procedural arguments advanced by the commissioner, we find them both to be without merit. Special Term clearly did not err when it failed to transfer the joint action and proceeding to this court for resolution pursuant to CPLR 7804 (subd [g]) because questions of law were presented therein and no issue was raised as to the existence of substantial evidence to support a determination of the commissioner (cf. *Harris v Lavine,* 43 AD2d 894). Similarly, the action was ripe for appeal even though its venue was originally New York County because, once it was joined with the proceeding for trial in Albany County, its venue was incidentally changed to Albany County (see *Kiamesha Concord v Greenman,* 29 AD2d 904). Turning now to the merits of the underlying dispute, we find ourselves in agreement with LIALS' contention that, since the 1972 amendments of sections 66 and 67 of the Transportation Corporations Law, the city's consent is no longer necessary for LIALS' continued operation of its omnibus routes between Kennedy and La Guardia airports and points in Nassau and Suffolk Counties. Prior to the cited amendments, the consent of all cities, towns and villages located on a proposed route was required before an omnibus line could be operated on the route, but after the amendment the consent of only cities, towns and villages which are "the beginning or ending point or terminal" of a proposed route is required. The obvious intent of these amendments was to deprive a single uninterested municipality located along a proposed route of the ability to block the operation of an omnibus line needed by communities at the terminal points of the route (see NY Legis Ann, 1972, pp 294-295), and in our judgment the city is such an uninterested municipality under the unusual circumstances presented in this dispute. In so concluding, we are not unmindful of the fact that both Kennedy and La Guardia airports, which are terminal points of the subject omnibus routes, are located within the geographic boundaries of the city, but we deem it far more significant that, pursuant to pertinent statutes and regulations and also the lease between the city and the Port Authority of New York and New Jersey (hereinafter Port Authority), jurisdiction and control over the airports has been vested in the Port Authority. Under the terms of the Laws of 1947 (ch 802, § 10), as amended by the Laws of 1948 (ch 785, § 1) and the subject lease, the operation of the airports is within the sole discretion of the Port Authority and its decisions relative to the operation of the airports are controlling and conclusive. In accordance with this statutory and contractual framework, the Port Authority effectively governs the lands occupied by the two airports. Not only does it maintain its own police force, but also it indemnifies the city from any claims for personal injury or property damage sustained by persons at the airports and has established rules and regulations for traffic control on highways at the airports (see L 1951, ch 206, § 1). Specifically, it has established speed limits, parking regulations, parking charges and mechanical and operational requirements and prohibited all commercial activity without its consent on airport property (see 21 NYCRR 1260.20, 1260.6, 1262.1-1262.23), and with regard to omnibuses it has regulated fire extinguishers, brakes, lights, defrosters, windshield wipers, safety glass, speedometers, dimensions, entrances and exits, heat and ventilation, and mirrors (see 21 NYCRR 1262.78, 1262.81). Furthermore, it is likewise noteworthy that the Port Authority has the vitally important responsibility of developing mass transportation facilities to provide travelers with better means of access to the airports (see L 1971, ch 474, § 1, as

amd by L 1973, ch 317, § 1; Governor's Memorandum, NY Legis Ann, 1971, pp 567-568) and that the city by its action and proceeding is in effect attempting to deprive approximately 5,000 travelers per week, who work or reside in Suffolk and Nassau Counties, of vital transport service between the airports and the counties by terminating LIALS' right merely to operate vehicles over city streets. Given this situation and the clear transfer of jurisdiction and control over the airports to the Port Authority, we can only conclude that the city is not a "beginning or ending point or terminal" on LIALS' omnibus routes within the meaning and intent of sections 66 and 67 of the Transportation Corporations Law and that, consequently, LIALS may continue to operate its routes even though the city has withdrawn its consent therefor because a contrary result would plainly frustrate the obvious intent of the Legislature in enacting the 1972 amendments to the cited statutes (see, generally, McKinney's Cons Laws of NY, Book 1, Statutes, § 111 and cases cited therein). Lastly, we agree with the city's contention that it is entitled to continue receiving compensation due under the terms of its 1968 franchise contract with LIALS. Even though the franchise term expired on December 31, 1977, LIALS expressly agreed in section 4.7 of the contract to continue paying the compensation and charges at issue should it continue operation of the omnibus routes after the termination, cancellation or expiration of the subject franchise, and it has presented no sound reason why it should not be bound by its contractual agreement. In this regard, it should be noted that the franchise contract does not limit the city's recovery of the disputed compensation to any amount remaining in the security fund established under the contract. We need reach no other issue. Order modified, on the law, by reversing so much thereof as granted plaintiff's motion for summary judgment on its first, second, third and fourth causes of action, and said causes of action dismissed, and, as so modified, affirmed, without costs. Judgment reversed, on the law, without costs, and petition dismissed. Mahoney, P. J., Sweeney, Main and Weiss, JJ., concur.

Levine, J., concurs in the following memorandum. Levine, J. (concurring). Although I agree with the result reached by the majority, I cannot agree with the means by which it arrived there, namely, that the City of New York lacks veto power over LIALS' right to operate existing routes between Kennedy and La Guardia Airports and points in Suffolk and Nassau Counties because its consent is not required under section 66 of the Transportation Corporations Law (as amd by L 1972, ch 194, § 1). The majority reasons that because various municipal powers over the airports were ceded by statute and lease to the Port Authority, the City of New York is no longer "any city which is the beginning or ending point or terminal" (Transportation Corporations Law, § 66). Clearly the statute intends that the two municipalities at the ends of the route under consideration are to have the right to give or withhold consent. Using the ordinary meaning of the words of the statute, since all of LIALS' routes either originate or terminate within the geographical boundaries of New York City, it must be the "city which is the beginning or ending point" under section 66. The unfortunate but necessary implication of the majority's ruling is that the city's consent would not be required concerning any new proposed routes into or out of all of New York City's transportation terminals controlled by the Port Authority, and not merely those from its two airports. The effect would be to place the State of New York's major metropolis and transportation center in a position inferior to its smallest city with respect to approval of new public transportation routes starting or ending within its geographical confines. I reach the same result as the majority in the instant case, however, but by a different path. Under long-standing precedent, the State has the pre-eminent power to regulate intermunicipal public transportation, and any sharing of

that control with local government is not a matter of right, but of legislative grace (*People ex rel. City of New York v Nixon,* 229 NY 356, 360; see, also, *Matter of Village of Bronxville v Maltbie,* 284 NY 206; *Matter of City of New York v Fullen,* 276 NY 574 [Finch, J., dissenting]). Therefore, the City of New York must find existing legislative authority upon which to base its having absolute power to prevent LIALS' continued operations. In my view, the 1972 amendment to section 66 of the Transportation Corporations Law, which sets forth the consent requirements in terms of "a proposed new motor vehicle line or route" and the 1982 amendment to section 150 of the Transportation Law (L 1982, ch 626, § 4), which repealed subdivision 7 of that section, clearly evince a legislative intent to limit a city's veto power at most to the approval of new routes or the enlargement of existing ones. Since the instant action pertained only to LIALS' authority to operate existing routes, the City of New York no longer has the absolute right to terminate LIALS' authority by unilaterally revoking consent. [110 Misc 2d 338.]