■ CITY OF NEW YORK, Respondent, v LONG ISLAND AIRPORTS LIMOUSINE SERVICE CORPORATION et al., Appellants. — Reargument of a decision of this court, dated January 27, 1983, which affirmed that part of an order of the Supreme Court at Special Term (Kahn, J.), entered September 21, 1981 in Albany County, which granted plaintiff City of New York's motion for summary judgment on its fifth cause of action seeking recovery of payments allegedly due under a franchise contract with defendant Long Island Airports Limousine Service Corporation. Defendant Long Island Airports Limousine Service Corporation (hereinafter LIALS) is the operator of an omnibus route from points in Nassau and Suffolk Counties to Kennedy and La Guardia Airports in plaintiff City of New York (hereinafter city). In 1977, a dispute developed between LIALS and the city regarding LIALS' continued operation of its omnibus route in the city after its franchise was canceled by the city's board of estimate on May 26, 1977 and its franchise contract expired on December 31, 1977. The pertinent underlying facts of the controversy are fully set forth in our earlier decision in this matter (*City of New York v Long Is. Airports Limousine Serv. Corp.*, 91 AD2d 1149). In that decision we held that, pursuant to sections 66 and 67 of the Transportation Corporations Law, as amended in 1972, the city's consent was no longer required for LIALS to operate its omnibus route in the city and, consequently, we reversed Special Term and granted summary judgment to LIALS on the injunction issue presented. As to the city's fifth cause of action for continued compensation under its franchise contract with LIALS, however, we ruled in favor of the city. The pertinent language of the contract, contained in section 4.7 thereof, provides that: "[I]n the event the Company continues the operation of the authorized routes, or any portion of the authorized routes after and in spite of termination, cancellation or expiration of the franchise hereby granted, the Company agrees to pay the City the compensation and charges set forth in this contract which were in effect immediately prior to such termination or expiration and in the manner as set forth herein, together with all taxes it would have been required to pay had its operation been duly authorized. If the Company shall fail to pay such compensation or taxes, the Comptroller of the City may withdraw the amounts thereof from the security fund if such fund shall not have already become the property of the City as in this contract

provided." Even though LIALS' franchise term expired on December 31, 1977, we earlier found that the city was entitled to continue receiving compensation under this section of the contract. Having now granted LIALS' motion to reargue as to the fifth cause of action, we conclude upon further reflection that it is unwarranted to allow the city to continue receiving the subject compensation. The only possible reason for the franchise contract between LIALS and the city was that the city's consent was required by statute before LIALS was entitled to operate on the city's streets. Consequently, LIALS entered into a contract with the city to secure such consent, and the consideration for LIALS' payments to the city under the contract was the grant by the city to LIALS of a franchise to operate its omnibus route. This court has now held that statutory amendments have stripped the city of its power to deny LIALS a franchise. That being so, the statutory changes have made the contract worthless to LIALS and also made performance of the contract vastly different from what could reasonably have been within the contemplation of the parties when the contract was made. Given these altered circumstances, it is clear that reasonable men would not have made the subject contract (see *City of New York v Local 333, Mar. Div. Int. Longshoremen's Assn.,* 79 AD2d 410, affd 55 NY2d 898), and that the contract has been rendered worthless to LIALS. Therefore, the consideration supporting the contract has failed, and LIALS' performance thereof is excused (see *United States v General Douglas MacArthur Senior Vil.,* 508 F2d 377; *Ewing Co. v New York State Teachers' Retirement System,* 14 AD2d 113, affd 11 NY2d 749). Accordingly, the entire complaint should now be dismissed. Order reversed, on the law, without costs, plaintiff's motion for summary judgment denied, and summary judgment dismissing the complaint granted to defendants. Mahoney, P. J., Sweeney and Main, JJ., concur.

Weiss and Levine, JJ., dissent and vote to affirm in the following memorandum by Levine, J. Levine, J. (dissenting). We are presented here with a simple and unambiguous contract in which the agreed upon reciprocal performances of the parties are clearly identified. Under the agreement, the city consented to LIALS' operation of routes for a term of almost 10 years. In return LIALS agreed to make periodic payments based upon a percentage of its receipts. LIALS also agreed, however, that should it continue to operate routes *after the termination of the city's contractual obligation to consent thereto,* it would continue to pay the city on the basis of the last effective rate of remuneration before termination of the contract. This additional obligation that LIALS undertook is, in our view, the only reasonable meaning which can be ascribed to the plain words of section 4.7 of the franchise contract in which LIALS agreed to continue to pay if it "continues the operation of the authorized routes *after and in spite of the termination, cancellation or expiration of the franchise hereby granted* * * * together with all taxes it would have been required to pay *had its operation been duly authorized"* (emphasis added). Thus, the parties explicitly provided for the eventuality of the city's contractual consent terminating and, for whatever reason, LIALS' continuing to operate routes, in which case LIALS would pay neither more nor less than it last paid while the contract was still in effect. The contingency covered by section 4.7 is precisely what happened here. The franchise contract expired and LIALS has continued to operate without the city's consent, as though "its operation [had] been duly authorized". Therefore, in our view, we should enforce LIALS' promise to pay under such circumstances. That the city, as a result of our prior decision, has lost its power to prevent LIALS' operation of the routes by withholding consent is of no moment. LIALS agreed to pay the city even without any continuing obligation of the city to consent, so long as it continued to use the routes. Under section 4.7 of the subject agreement, the obligation to pay following expiration of the term of the franchise is as much measured by use as that presented in

*Muzak Corp. v Hotel Taft Corp.* (1 NY2d 42). *Muzak* should be controlling, in that entitlement to compensation for use of sound equipment was enforced in that case despite the plaintiff's loss of its right to prevent such use when it previously transferred title to the equipment to the defendant. To avoid the clear language of the franchise contract imposing the duty to pay for use of routes after effective consent by the city had terminated, the majority invokes the doctrine of failure of consideration. Its reasoning is as follows: LIALS only entered into the contract to secure what was then the city's legally necessary consent to its operation of the routes. Now that the city can no longer prevent LIALS' use of the routes, the consideration (the city's consent) supporting LIALS' promise to pay has been rendered valueless, resulting in the discharge of any further performance by LIALS by reason of failure of consideration. For several reasons, the discharge of LIALS' further performance of its obligation under section 4.7 cannot be excused on the basis of failure of consideration or "supervening frustration of purpose", the phrase employed in the Restatement of Contracts, Second (§ 265) when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract. First, the majority's rationale has to assume that the contract continues to be totally executory on both sides, so that the bargained-for equivalent of LIALS' *continuing* promise to pay is the city's *continuing* consent. This interpretation of the agreement may perhaps have been viable if LIALS had refused to pay during the term of the franchise and if section 4.7 had not been inserted in the agreement. Here, LIALS' refusal to pay occurred after the city's contractual duty to consent had expired. At that point section 4.7 takes over defining the rights and obligations of the parties and, as previously discussed, clearly negates the existence of any executory duty of consent on the part of the city. Further, the majority's interpretation is inconsistent with the practical construction of the contract by the parties, since LIALS continued to make the payments provided thereunder for a period of approximately five years *after* the Legislature removed the requirement of the city's consent to its operation of routes (see *Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46-47, *supra*). Second, in order for a party to be discharged on the basis of failure of consideration, the reciprocal performance rendered valueless must be the "foundation of the contract" (*Raner v Goldberg,* 244 NY 438, 442; *Pettinelli Elec. Co. v Board of Educ.,* 56 AD2d 520, 521, affd 43 NY2d 760), "so completely the basis * * * that, as both parties understand, without it the transaction would make little sense" (Restatement, Contracts 2d, § 265, Comment *a*). Further, the circumstance destroying the consideration must be one which could not have been anticipated by the parties and, therefore, provided for specifically in the agreement (*Raner v Goldberg,* 244 NY 438, 441, *supra; Strauss v Long Is. Sports,* 60 AD2d 501, 510-511). Neither of these requirements is met here. Certainly, LIALS attained its major objective when the city granted its consent for the original term of the franchise. LIALS was thereby enabled to open its routes and to obtain its State certificate of public convenience and necessity, which in turn protected it from competition and ultimately from the effect of the city's termination of consent. LIALS continues, presumably profitably, to operate its routes. Thus, it can hardly be said that the city's continued power to withhold permission to operate after the expiration of the contract was the "foundation of the contract" or, as the majority has held, that LIALS would not have entered into the contract had it known that the city subsequently would be stripped of its veto power. Rather, just as in *Haines v City of New York* (41 NY2d 769), the initial performance of the city furnished sufficient consideration to support LIALS' obligation, even though later governmental action may have obviated the original purpose of the agreement. Likewise, when this agreement was entered into, the law was well

established that the State had the pre-eminent power to regulate intermunicipal public transportation, and any sharing of that control with local government was not a matter of right, but of legislative grace (*People ex rel. City of New York v Nixon*, 229 NY 356, 360; see, also, *Matter of Village of Bronxville v Maltbie*, 284 NY 206; *Matter of City of New York v Fullen*, 276 NY 547 [Finch, J., dissenting]). Therefore, LIALS should reasonably have anticipated the possibility of legislative curtailment of the city's veto power and could have suitably provided for that eventuality in the agreement.* In sum, the parties fairly and explicitly allocated their respective financial risks concerning the need for the city's consent after the expiration of the term of the franchise. If the city's authorization was still required, undoubtedly it would have exacted additional remuneration for permitting LIALS' continued operation of the routes. The parties agreed, however, that if LIALS was able to operate the routes without permission, it would pay the sums required immediately before expiration of the franchise. LIALS should be held to its bargain. Therefore, we would affirm Special Term in granting the city's motion for summary judgment on its fifth cause of action.

---

* In this regard, it is noteworthy that the agreement is replete with other provisions showing the parties' awareness that the rights conferred therein were subject to superior State authority (see §§ 2.12, 8.1-8.4, 15.1).