**In re PRIME MOTOR INNS, INC., et al., Debtors.**

**NORTHEAST HOTEL ASSOCIATES, R/C Hotel Associates, Universal Motor Lodges, Southeast Hotel Associates, Hauppauge Hotel Corp., and Pennco Hotel Corp., Plaintiffs**

v.

**PRIME MOTOR INNS, INC., et al., Defendants.**

**Bankruptcy No. 90–16604–BKC–AJC. Adv. No. 91–0630–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida, Miami Division.

Aug. 23, 1991.

Charles Kotick, Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, Marshall Cooper, Cooper & Frazier, Fort Lauderdale, Fla., for plaintiffs.

Steven Reisberg, Wilke Farr & Gallagher, New York City, for debtors/defendants.

Joseph A. Gassen, Mershon, Sawyer, Johnston, Dunwoody & Cole, P.A., Miami, Fla., for Unsecured Creditors' Committee.

## ORDER GRANTING PRELIMINARY INJUNCTION

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE, having come before the Court upon Complaint for Injunctive Relief and Application for Temporary Restraining Order duly filed by Plaintiffs, NORTHEAST HOTEL ASSOCIATES, *et al.* ("Northeast"), the Court having read and reviewed the Complaint, the Memorandum of Law in Support of Injunctive Relief and Application for Temporary Restraining Order, the Affidavit for Order to Show Cause and Temporary Restraining Order duly sworn to by Allan V. Rose, and the Supplemental Memorandum of Law in Support of

Application for Injunctive Relief, as well as The Memorandum of Law in Opposition to Motion for a Preliminary Injunction and the Affidavit of Robert S. Bingham filed on behalf of Defendants PRIME MOTOR INNS, INC. ("Prime"), PMI INVESTMENT, INC. ("PMI"), *et al.*, having heard the arguments of counsel, and being fully advised in the premises, the Court finds as follows:

Plaintiffs and Defendants entered into a series of agreements and transactions pursuant to which Defendant PMI agreed to advance to Plaintiffs up to a maximum of $200,000,000, secured by mortgages on various properties owned by certain of the Plaintiffs and guaranteed by certain other of the Plaintiffs. The terms of the Agreement are set forth in a certain Amendment and Restatement, as amended by the First Amendment to Restated Amendment and Restatement (the "First Amendment") between Plaintiffs and PMI (the Amendment and Restatement and the First Amendment are sometimes referred to collectively as the "Loan Agreement"). Section 11.4 of the Loan Agreement provides that it is governed by New York law.

PMI is obligated to advance monies to Plaintiffs under highly complex formulae set forth in the Loan Agreement, throughout the term of the loan. In consideration for the loan, PMI is to receive interest on the loan based upon cash flow generated by the mortgaged properties pursuant to the provisions of the Loan Agreement. Each time an interest payment is due, pursuant to the Loan Agreement, PMI advances money in the amount of the interest payment due to Plaintiffs. Plaintiffs then repay this money to PMI.

Section 6.5 of the Loan Agreement provides that:

(a) [Plaintiffs] shall furnish to PMI, within, 105 days of the end of each fiscal year, unaudited financial statements for each Property or Development Property, and audited financial statements for the Properties and Development Properties taken as a whole, including a balance sheet and statements of income and changes in financial position, prepared by Laventhol & Horwath (or such other firm or recognized independent certified public accountants selected by [Plaintiffs] and consented to by PMI, which consent shall not be unreasonably withheld).

In or about November, 1990, Laventhol & Horwath ("L & H") filed for relief under the Bankruptcy Code and ceased operating. Accordingly, Plaintiffs retained new accountants, Coopers & Lybrand ("C & L"). C & L commenced their audit of Plaintiffs in order to prepare the necessary financial statements but were not able to complete them in the time remaining prior to the deadline because an entirely fresh audit of two years was required. Plaintiffs are, therefore, technically in default of the Loan Agreement.

Section 9.6 of the Loan Agreement provides that if Plaintiffs fail to deliver financial statements pursuant to section 6.5 of the Loan Agreement, and such failure continues for 75 days after notice of such failure, then such failure constitutes an event of default under the Loan Agreement. Section 10.1 of the Loan Agreement provides in relevant part that:

upon the occurrence of any Event of Default hereunder, the Loan or Extension Loan, as the case may be, together with all interest accrued thereon, shall, at PMI's option and ... upon notice, thereupon become immediately due and payable ...

If Defendants are permitted to accelerate the loan pursuant to section 10.1 of the Loan Agreement it would have devastating consequences for Plaintiffs because it may trigger the acceleration of the repayment of $222,840,000 to other lenders under other loan agreements. In contrast, Defendants will not suffer any harm merely by virtue of having to wait a reasonable period of time until Plaintiffs' newly retained accountants, C & L, can complete an audit and prepare financial statements in an orderly fashion. Even if PMI accelerates the amount due under the Loan Agreement, PMI will not be able to collect that amount or foreclose on Plaintiffs' assets pursuant to certain intercreditor agreements to which it is a party.

■ The Court finds that the greater weight of the equities is on Plaintiffs' side. Plaintiffs should be excused from complying with the requirement to provide audited financial statements to Defendants within the time limits set by section 6.5 of the Loan Agreement; Defendants should be enjoined from declaring a default under the Loan Agreement and from accelerating.

■ Defendants should be enjoined from accelerating the loan because such acceleration will severely harm Plaintiffs. The Bankruptcy Code grants the Court broad equitable powers to issue an injunction in order to prevent the drastic consequences that would result upon an acceleration. 11 U.S.C. § 105(a); Bankruptcy Rule 7065; *cf. In re Davis*, 730 F.2d 176, 183 (5th Cir. 1984) (bankruptcy courts have broad powers analogous to those of a court of equity). In exercising such powers, a bankruptcy court must

> seek equity not only for the [d]ebtors, but also for the creditors. In doing so, it must consider the detriment which the creditors ... will suffer during the proceedings.

*In re Sung Hi Lim*, 7 B.R. 316, 318 (Bankr. D.Haw.1980); *see also In re Carlton*, 72 B.R. 543, 547 (Bankr.E.D.N.Y.1987). Other courts of equity recognize that, under certain circumstances, an acceleration of a debt is a harsh remedy and exercise their equitable powers to prevent inequitable results. *See e.g., Brown v. Avemco Investment Corp.*, 603 F.2d 1367 (9th Cir.1979).

*Brown* sets forth the rule of law to be applied in this case. In *Brown*, the lender refused to accept final payment on a note secured by an airplane and declared the loan in default because the airplane had been rented without the lender's consent. The lender then accelerated the loan, repossessed the airplane and sold it to a third party. The lender never contended that the loan payments had not been made prior to the acceleration or that they would not be made in the future.

In holding that the trial court erred in refusing to instruct the jury that equity precludes a lender from accelerating a debt unless he believes in good faith that his security is impaired, the Ninth Circuit Court of Appeals stated:

> Acceleration clauses are designed to protect the creditor from actions by the debtor which jeopardize or impair the creditor's security. They are not to be used offensively, e.g., for the commercial advantage of the creditor. Acceleration is a harsh remedy with draconian consequences for the debtor ... courts of equity will 'scan very closely the enforcement of so hard and rigorous a contract.'

*Brown*, 603 F.2d at 1376 (citations omitted).

In this case, equity precludes Defendant from accelerating the loan. The breach which gave rise to Defendants' right to accelerate did not impair Defendants' security or ability to recover on the loan. Defendants' economic risk is not increased merely because Plaintiffs are unable to provide audited financial statements timely.[1] In contrast, Plaintiffs may suffer extreme and irrevocable hardship because a default under the Loan Agreement may trigger the acceleration of the repayment of $222,840,000 to other lenders under other loan agreements. In sum, acceleration of the loan in this case would be unjust in light of the harm that would accrue to Plaintiffs and the fact that Plaintiffs' default is merely a technical one which does not put Defendants at risk.

■ The court may grant an injunction if the party seeking a preliminary injunction shows (1) a substantial likelihood that the movant will prevail on the merits; (2) that the movant will suffer irreparable harm unless the injunction is granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if granted, would not be adverse to the public interest. *See Shatel v. Mao Ta Lumber and Yacht Corp.*, 697 F.2d 1352, 13154–55 (11th Cir. 1983). In addition, a preliminary injunction should be granted where, as here, the

---

1. This is especially true in light of Plaintiffs' counsel's representation at the hearing that Plaintiffs have given Defendants unaudited financial statements for the period in question.

threat of harm is actual and imminent rather than remote or speculative. *See Salant Acquisition Corp. v. Manhattan Indus.,* 682 F.Supp. 199 (S.D.N.Y.1988).

Plaintiffs have shown that they are likely to succeed on the merits: Plaintiffs' performance of their obligation to provide Defendants with audited financial statements was excused because performance was legally impossible as a consequence of L & H's bankruptcy. The general rule under New York law is that a party to a contract must perform unless the means of performance makes performance objectively impossible. *Kel Kim Corp. v. Central Markets, Inc.,* 70 N.Y.2d 900, 524 N.Y.S.2d 384, 519 N.E.2d 295 (1987). The impossibility must have been caused by an unanticipated event that could not have been foreseen or guarded against in the contract. *Id.* However, the New York courts have applied the doctrine of legal impossibility to excuse a party's performance by determining the reasonable expectation of the parties. *See e.g., City of New York v. Local 333, Marine Division, Intern. Longshoremen's Ass'n,* 79 A.D.2d 410, 437 N.Y.S.2d 98, *aff'd* 55 N.Y.2d 898, 449 N.Y.S.2d 29, 433 N.E.2d 1277 (1981); *Moyer v. City of Little Falls,* 134 Misc.2d 299, 510 N.Y.S.2d 813 (Sup.1986) (performance by successful bidder on public sanitation contract excused because drastic increase in cost of performance could not have been foreseen).

Here, the Loan Agreement obligates Plaintiffs to provide audited financial statements produced by L & H, or another accounting firm of like calibre to which Defendants have consented. Although it was contemplated that Plaintiffs may have desired to enlist the services of accountants other than L & H, it was not contemplated that Plaintiffs would be faced with an emergency situation in which they would *need* to obtain other accountants because of L & H's demise. Thus, L & H's bankruptcy constitutes an unanticipated event that was not foreseen or guarded against in the contract.

Moreover, at the hearing, Plaintiffs advised the Court that they previously informed the Debtors they were utilizing the services of C & L. Plaintiffs stated that they requested the Debtors accept such financial statements C & L may prepare on the basis that C & L is a recognized certified public accounting firm, as that term is used in Section 6.5 of the Loan Agreement. However, it was not until the hearing on this matter that the Debtors responded to Plaintiffs' request. Even then, their consent to C & L was given hesitantly. It therefore appears the Plaintiffs' failure to provide financial statements is a consequence of not only the unanticipated event of L & H's bankruptcy filing, but also the Debtors' failure to timely respond to the Plaintiff's request for consent. Accordingly, it appears Plaintiffs' performance should be excused.

As set forth above, the harm to Plaintiffs as a consequence of Defendants declaring a default under the Loan Agreement far outweighs the effect on Defendants of the injunction. Finally, no public policy is at issue here.

It is hereupon:

ORDERED that:

1. Plaintiffs, NORTHEAST HOTEL ASSOCIATES, INC., *et al.* shall be and hereby are excused for a period of 60 days from fulfilling its accounting requirements under that certain section 6.5 of the Loan Agreement, pending the outcome of the final hearing on this matter; and

2. Defendants, PRIME MOTOR INNS, INC., *et al.* shall be and hereby are preliminarily enjoined for a period of 60 days from declaring a default and from accelerating Plaintiffs obligations under the Loan Agreement, pending the outcome of the final hearing on this matter; and

3. The preliminary injunction imposed herein shall not dissolve automatically but only by order of this Court rendered upon the final hearing of this cause to determine whether a permanent injunction should issue. Plaintiffs and Debtors are directed to contact the Courtroom Deputy to schedule a final hearing within sixty (60) days.

DONE AND ORDERED.